UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KEITH D. TANNEHILL, | ) | 1:08-CV-01657 JMD HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DECLINING TO ISSUE |
| DARREL ADAMS, | ) | CERTIFICATE OF APPEALABILITY |
| | ) | |
| Respondent. | ) | ORDER DIRECTING CLERK OF COURT TO |
| | ) | ENTER JUDGEMENT |

Petitioner Keith D. Tannehill ("Petitioner") is a state prisoner proceeding pursuant to 28 U.S.C. § 2254 with a petition for writ of habeas corpus.

## PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation. (Pet. at 1.) A jury in the Fresno County Superior Court found Petitioner guilty on December 19, 2005, of willful discharge of a firearm with gross negligence (Cal. Penal Code § 246.3) and possession of marijuana for sale (Cal. Health & Safety Code § 11359). (Pet. at 2; Answer at 3.) The jury further found that Petitioner had inflicted great bodily injury during the commission of the felony (Cal. Penal Code § 12022.7). (Answer at 3.) Petitioner pled no contest to the charge of escape (Cal. Penal Code § 4532(b)(1)). (Id.) On May 25, 2006, the trial court sentenced Petitioner to a prison term of six years and four months. (Answer at 3; RT at 2715.)

Petitioner first appealed his conviction by filing a petition for writ of habeas corpus with the Fresno County Superior Court on September 2, 2006. (Lod. Doc. 5 at 1.) The Superior Court denied the petition, finding that the issues raised by Petitioner were typically addressed in a direct appeal. (Id.)

1    Petitioner then filed a direct appeal of his conviction with the California Court of Appeal,
2 which issued a reasoned opinion affirming Petitioner's conviction on August 14, 2007. (*See* Lod.
3 Doc. 6.)
4    On September 11, 2007, Petitioner filed a petition for review to the California Supreme
5 Court. (Lod. Doc. 7.) The California Supreme Court denied the petition for review on November
6 14, 2007. (Id.)
7    On October16, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.[1]
8    On October 9, 2009, Respondent filed an answer to the petition. Petitioner did not file a
9 traverse to the answer.

10 <u>Consent to Magistrate Judge Jurisdiction</u>

11    On October 16, 2008, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1), to
12 have a magistrate judge conduct all further proceedings, including the entry of final judgment.
13 (Court Doc. 3.) Respondent also consented to the jurisdiction of a magistrate judge. (Court Doc.
14 14.) On June 1, 2010, the case was reassigned to the undersigned for all further proceedings. (Court
15 Doc. 18.)

## FACTUAL BACKGROUND[2]

On August 1, 2005, at about 10:00 a.m., police responded to a shooting at the studio apartment of appellant Keith Tannehill and his live-in girlfriend Lesheay White, who had been shot in the right ankle. Tannehill and White had been dating for four years and shared a then-three month old daughter.

Initially, White told police that a stranger shot her outside the apartment because she responded rudely when asked for the time. Tannehill was not present when police arrived, and White claimed that he had left two minutes prior to the shooting after accusing her of having an affair. White said that this accusation caused her to act rudely to the stranger. However, police noted that White's story conflicted with the physical evidence, which indicated that the shooting occurred inside the apartment. Specifically, police observed no blood trail outside the apartment, but found blood on the carpet, gunshot holes, a spent shell casing, and live ammunition inside.

---

[1] Respondent admits that the instant petition is timely. (Answer at 2.)

[2] These facts are derived from the California Court of Appeal's opinion issued on August 14, 2007. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

Before 11:00 a.m. on the morning of the shooting, Tannehill visited a friend, who told his sister to give Tannehill a ride in her car. She drove Tannehill to a dumpster at a 76 station near his apartment, where he retrieved a pizza box and a small ammunition box. Next, they returned to her apartment, leaving the boxes in the car, and he asked her to pick up his daughter from his apartment. Tannehill never mentioned why he wanted her to get his daughter nor why he retrieved the boxes. After she arrived at Tannehill's apartment, officers refused to hand over the child, and when interrogated, she denied visiting the dumpster. She then left the scene but was quickly pulled over, and officers seized the ammunition box, which was empty but labeled for .25 caliber bullets.

About one month later, White was further interviewed by police and said that she and Tannehill had been arguing all morning before the shooting. She said that she picked on Tannehill until he produced a black .25 caliber firearm, that he suddenly shot her in the ankle, that he was apologetic, that she believed it was an accident, and that he then left the apartment for an unknown address. White said that she knew the firearm was .25 caliber because she had seen Tannehill handle a .25 caliber weapon before, she was familiar with .25 caliber ammunition, and Tannehill had a box of .25 caliber ammunition. Lastly, White said that she blamed herself for the incident and that she initially lied to police because she feared losing her baby.

A few days after the interview, White wrote in a "To whom it may concern letter" that Tannehill had not assaulted her and that he was a good father who provided for his family. White explained that she lied during the interview because she was afraid of being prosecuted and losing custody of her daughter. However, White never contacted the interviewing officer to withdraw her statement, even though Tannehill was already in jail.

At trial, White testified that she lied when she told police that Tannehill shot her. She claimed that she lied out of jealously, having learned that Tannehill had an affair when she was six-months pregnant and was still "talking" to "other random females." White also testified that the man she was having an affair with shot her. She claimed that after she mentioned ending the affair he threatened her with a gun and that it just "went off like it had a default." White admitted that she had never mentioned her true assailant until trial and claimed that she was getting along well and not fighting with appellant. After being shot, White said that she dialed 911 and that the man fled. White also claimed that he was responsible for shooting the hole in the wall inside her apartment. Tannehill was allegedly absent when all this occurred because he had spent the prior night at a friend's house and had not yet returned home. However, when Tannehill was first questioned by police, he said that he was at the apartment the morning of the shooting, that he and White were arguing, but that he left before the shooting occurred.

After his arrest, Tannehill phoned and wrote White, threatening and encouraging her not to testify. For example, Tannehill wrote to White that she "violated the game" and that "this could get [her] waked [ sic ]," which White said meant she could be whacked for telling police the truth.

Two months after the shooting, police retrieved a small caliber bullet, approximately a .22 or .25, from a gunshot hole two to three feet above the floor inside Tannehill's apartment. During the search, White told police that Tannehill was the shooter and that the incident was an accident.

(Lod. Doc. 6 at 2-4.)

**DISCUSSION**

**I.     Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution during his trial in the Tulare County Superior Court. Petitioner is currently incarcerated at Avenal State Prison, which is located in Kings County. (Am. Pet. at 2.) As Kings and Tulare County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.    ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

\\\

\\\

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth

Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-601 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue...This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Id*. Here, the Fresno County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. As the Fresno County Superior Court denied Petitioner's claims on procedural grounds and the California Supreme Court issued a summary denial, the Court looks through these decisions to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

\\\

\\\

### III.     Review of Petitioner's Claims

The petition for writ of habeas corpus contains a sole ground for relief, alleging that there was insufficient evidence to support Petitioner's conviction under California Penal Code section 246.3(a).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting that under AEDPA, a petition for habeas corpus may only be granted where the state court's application of *Jackson v. Virginia*, 443 U.S. 307 (1979) was objectively unreasonable). In *Jackson*, the Supreme Court cited to its previous holding in *In re Winship*, 397 U.S. 358, 364 (1970) in stating that, "the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Thus, a state prisoner is only entitled to habeas relief on this ground where no rational trier of fact could have found proof beyond a reasonable doubt based on the evidence adduced at trial. *Jackson*, 443 U.S. at 324; *see McDaniel v. Brown*, 130 S. Ct. 665, 666 (2010) (per curiam).

Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual finding is fairly supported by the record is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Lewis v. Jeffers*, 497 U.S. 764, 781 (1990); *Bruce v. Terhune*, 376 F.3d 950 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319) in stating "*Jackson* cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution'"). Where the record supports conflicting inferences, a federal habeas court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Additionally, a jury's credibility determination is "entitled to near-total deference under *Jackson*," *Bruce*, 376 F.3d at 957, as assessing the credibility of witnesses is generally beyond the scope of a *Jackson* review, *Schlup v. Delo*, 513 U.S. 289, 330 (1995). Lastly, a federal habeas court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Kuhlmann v.*

1  *Wilson*, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to a state appellate

2  court's determinations of fact as well as those of a state trial court.  *Tinsley v. Borg*, 895 F.2d 520,

3  525 (9th Cir. 1990).  Although the presumption of correctness does not apply to a state court's

4  determinations of legal questions or to mixed questions of law and fact, a state court's factual

5  findings underlying its conclusions on mixed issues are accorded a presumption of correctness.

6  *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004); *see also Sumner v. Mata*, 455 U.S. 591, 597

7  (1982) (per curiam) (holding that the questions of fact that underlie mixed questions are governed by

8  the presumption contained in 28 U.S.C. § 2254).

9        Sufficiency of evidence claims are judged by "the substantive elements of the criminal

10 offense as defined by state law." *Jackson*, 443 U.S. at 324, n.16.  Petitioner was convicted of

11 violating California Penal Code section 246.3(a), which prohibits a person from willfully discharging

12 a firearm in a grossly negligent manner which could result in death or injury to a person.  "California

13 courts have defined the elements of a section 246.3 offense to include: '(1) the defendant unlawfully

14 discharged a firearm; (2) the defendant did so intentionally; and (3) the defendant did so in a grossly

15 negligent manner which could result in the injury or death of a person.'" *United States v. Coronado*,

16 603 F.3d 706, 711 (9th Cir. 2010) (quoting *People v. Overman*, 24 Cal.Rptr.3d 798, 809 (2005)).

17 Similarly, the California Court of Appeal in this case observed that:

18     In the context of section 246.3, the willful and gross negligence components are
       discrete elements of the offense. (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1440.)
19     "Willfully" means that the firearm must have been intentionally discharged, as
       opposed to an accidental shooting where the perpetrator believed that the gun was
20     unloaded. (*People v. Robertson* (2004) 34 Cal.4th 156, 167; *Jerry R.*, *supra*, 29
       Cal.App.4th at p. 1439.)  Thus, proof that the defendant purposely, willingly, or
21     intentionally discharged the firearm is required. (*Jerry R.*, *supra*, 29 Cal.App.4th at p.
       1439.)  Next, "grossly negligent," in the context of criminal liability, means conduct
22     that so departs from ordinarily prudent conduct under the same circumstances as to be
       incompatible with a proper regard for human life. (*Robertson*, *supra*, 34 Cal.4th at p.
23     168; *People v. Alonzo* (1993) 13 Cal.App.4th 535, 539-540.)

24 (Lod. Doc. 6 at 5).  As "a state court's interpretation of state law, including one announced on direct

25 appeal of the challenged conviction, binds a federal court sitting in habeas corpus," the Court must

26 accept the Court of Appeal's interpretation of section 246.3(a)'s requirements.  *Bradshaw v. Richey*,

27 546 U.S. 74, 76 (2005) (per curiam); *see Musladin v. Lamarque*, 555 F.3d 830, 838 n.6 (9th

28 Cir.2009) (finding that habeas court must presume that state courts know and follow the law and that

state-court decisions be given the benefit of the doubt under AEDPA deferential standards).

Petitioner argues that there was insufficient evidence pertaining to whether he intentionally, purposely, or willfully discharged the weapon. Petitioner similarly challenges the sufficiency of the evidence relating to whether his conduct was grossly negligent. The California Court of Appeal rejected both arguments in denying the petition for writ of habeas corpus. The Court does not find this to be an objectively unreasonable application of *Jackson*. The Court initially notes that the State appellate court correctly identified the applicable legal standard (Lod. Doc. 6 at 4-5), before analyzing the evidence and determining that there was sufficient evidence Petitioner intentionally discharged the weapon. The California Court of Appeal observed that:

> Considering the whole record in a light most favorable to the judgment, the evidence readily indicates that appellant intentionally discharged the weapon in a grossly negligent fashion. Concerning the willful element of the offense, the physical evidence and testimony show that appellant was at the apartment the morning of the shooting, that he argued with the victim minutes prior to the shooting, that he shot the victim with a .25 caliber weapon, and that he possessed .25 caliber ammunition. Given this evidence, a jury could easily and reasonably find that appellant intended to discharge the weapon during the course of the argument, especially since the victim was allegedly badgering appellant. Some of the victim's testimony indicates that the shooting may have been accidental, but the jury was free to question the credibility of that testimony, especially given appellant's threatening letters and phone calls. And, in any case, the mere possibility that the circumstances may be reconciled with a contrary finding is insufficient to warrant reversal. [citation] Thus, we believe that ample evidence was presented on the willful element of the offense, permitting a jury to reasonably find that appellant intentionally discharged the weapon.

(Lod. Doc. 6 at 5-6.)

The Court does not find the analysis undertaken by the appellate court to be an unreasonable application of *Jackson* nor is it an unreasonable determination of facts in light of the evidence presented in the record. 28 U.S.C. § 2254(d). Evidence produced at trial permitted a reasonable trier of fact to conclude that Petitioner shot the victim. (RT at 55, 1221.) Additionally, the victim had told police that she and Petitioner argued immediately prior to the shooting (RT at 1217-1218), and that she had been picking on/challenging Petitioner during this argument (RT at 1217). It was during this argument that Petitioner produced the gun and shot the victim. (RT at 1221.) From this evidence, the jury could have inferred that Petitioner discharge of the weapon was an intentional act provoked by the victim's challenging behavior and the argument, especially as the gun was produced during the argument. Thus, the Court finds that the appellate court's conclusion that there was

sufficient evidence to support the intentional element of the crime to be objectively reasonable.

Similarly, the appellate court found that there was sufficient evidence that Petitioner's conduct constituted gross negligence, stating that "the simple fact that the victim was shot is a sufficient basis for the jury to reasonably conclude that appellant's conduct was a gross departure from ordinarily prudent conduct, particularly when the evidence demonstrates he pulled out the weapon during an argument." (Lod. Doc. 6 at 6.) The appellate court further found the size of the apartment and the presence of a three month old child evidenced grossly negligent conduct. (Id.) The Court finds this reasoning persuasive as it was uncontested that the weapon was discharged in a relatively small confined space with two other people in the area. These facts evidence conduct that deviates from ordinarily prudent conduct and is incompatible with a proper regard for human life. The Court finds that a reasonable trier of fact could infer from that evidence that Petitioner's conduct was grossly negligent such that it could result in the injury or death of a person.

## IV.     Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040. Here, the Court finds that reasonable jurists would not disagree with the Court's denial of Petitioner's habeas claim. Thus, the Court finds that Petitioner's claim is not deserving of encouragement to proceed further and that Petitioner has failed to make the requisite showing that he was denied a constitutional right. Accordingly, the Court hereby DECLINES to

1  issue a certificate of appealability.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

**Dated:    June 7, 2010**                    **/s/ John M. Dixon**
                                              UNITED STATES MAGISTRATE JUDGE